EDWIN B. HARRIS AND OTHERS *vs.* THE TOWNS OF WOOD-
STOCK, POMFRET AND EASTFORD.

A committee to whom a highway petition had been referred by the superior
court, after having fully heard the parties and met for the purpose of deciding
the case, stood, one in favor of laying out the road, one opposed to it, and
one undecided. They then adjourned for further consideration and to ex-
amine the route for themselves. After the adjournment and before they met
again, the member of the committee whose opinion was against laying out
the road, suggested to the agent of the respondents to procure a further sur-
vey of the proposed route, showing the altitude of the hills, to be laid before
the committee. A county surveyor was accordingly employed by the agent,
who made such a survey, and appended to it sundry remarks with regard to
the difficulty and expensiveness of constructing and repairing the proposed
road. This survey and the accompanying remarks were laid before the com-
mittee at their next meeting, in the absence of the petitioners, who had no
knowledge of the proceeding. On taking their final vote at this meeting, a
majority of the committee, consisting of the member whose opinion was
before adverse to the road and the member who had been undecided, voted
against laying out the road, the other member voting in favor of it. The
majority then reported adversely to the petition, and the petitioners remon-
strated against the acceptance of their report, on the ground of their " irregu-
lar and improper conduct " in receiving the survey and remarks upon it
above stated. The superior court found, on the testimony of both the mem-
bers of the committee who signed the report, that the survey and the remarks
accompanying it had no influence upon their minds, and that their decision
would have been the same without them. Held, in advising that the report
of the committee be set aside,—1. That the conduct of the committee was
" irregular and improper," and such that their report ought not to be sus-
tained. 2. That the finding of the court that the communication had no in-
fluence upon their minds, did not remove the objection to the report, since
the member of the committee whose opinion was in suspense, and upon
whose testimony the court had so found, could not himself know with cer-
tainty that his mind was not in some measure influenced by the com-
munication.

THIS was a petition for a highway, which was referred by
the superior court to a committee, consisting of A. D. Lock-
wood, David Gallup and George Tillinghast. The commit-
tee reported against the petition, and the petitioners remon-
strated against the acceptance of the report on the ground
that the committee had been guilty of irregular and improper
conduct in their proceedings.

On the hearing upon the remonstrance, the court found

the following facts with regard to the matters alleged in the remonstrance.

The parties appeared before the committee and were fully heard with their evidence and counsel, and the case was fully submitted to the committee. The committee then took an informal ballot upon the question, whether the whole road prayed for in the petition was of common convenience and necessity, and the ballot was unanimous in the negative. They then took an informal ballot upon the question whether the eastern portion of said road should be laid out, and two of the committee voted in the affirmative and one in the negative. Upon the announcement of this vote, Mr. Lockwood, one of the committee, said to them that he was one of the two that had voted in the affirmative, but that he did not give that vote as an expression of his real views, for his mind was not fully made up, and, fearing that the vote might be unanimous in the negative, he had thought proper to cast a vote in the affirmative, to lay a foundation for a discussion in the committee before their final action. Not being able to come to a satisfactory result, they adjourned their meeting to a future day, and appointed a time when they would review the proposed route by themselves. After they had adjourned, and on the same day, Mr. Gallup, one of the committee, in the absence of the other members of the committee, and of the other parties to the petition, requested William Lyon, the agent of the town of Woodstock, to employ a surveyor, and to take the altitude of the hills on the proposed new route, and also on the old highway called the Browning hill road, and informed him when the committee were again to meet to dispose of the matter before them. Mr. Lyon thereupon employed one William Lester of Woodstock, a county surveyor, to make a survey of the routes; and Lester, in company with Lyon and one Joseph McClellan of Woodstock, and aided solely by them, and in the absence of all other parties in interest, and without their knowledge, made a survey of said routes, and took the altitude of the hills, and made a report of his doings in writing, accompanied with remarks upon the practicability of the proposed road and

the great expense of making the same from want of good materials on the route for making the road, and the great expense of keeping it in repair if not well made. While Lester was so making his survey, and before he had completed the same, Mr. Gallup and Mr. Tillinghast, another member of the committee, met Lester and his party accidentally upon the proposed route, and Mr. Gallup requested Lyon to forward to him the report of Lester as soon as it should be completed. The report of Lester was afterwards enclosed by Lyon in a letter to Mr. Gallup, and came into his hands on the day the committee met in pursuance of their last adjournment, and was by him handed to Mr. Lockwood, while he, Gallup and Lyon were in a room by themselves; and the report was read by the committee before their final action in the matter; all which proceedings were without the knowledge or consent of any of the other parties to the petition. Upon acting finally on the matter, Messrs. Gallup and Lockwood were opposed to laying out the road and Mr. Tillinghast in favor of it, and a report was made by the two former against the application.

The court found that Mr. Gallup was, from the beginning of the consultations of the committee, opposed to the laying out of any portion of the road, that Mr. Tillinghast was in favor of laying out the eastern portion, and that Mr. Lockwood was in doubt as to laying out the eastern portion at their first meeting to consider that question. And the court further found, from the direct and positive testimony of each of the committee separately examined, that the survey of Mr. Lester and his communication above referred to, had no influence whatever with them in coming to their result, and that their decision and report would have been the same had no such communication been submitted to them. The court further found that the survey of Mr. Lester was hastily made, occupying some three or four hours only, and gave a representation of the surface of the new proposed road as it then was, and did not show how the grades of the hills might be reduced if the road was well wrought; but that the survey was on the whole substantially correct upon the plan

adopted by the surveyor, but was not verified by his oath, except his official oath.

Upon these facts the case was reserved for the advice of this court, as to whether the report of the committee should be accepted or rejected.

*Cleveland* and *Phillips*, for the petitioners.

The conduct of the committee in receiving the additional evidence from one of the parties in the absence and without the knowledge of the others, was irregular and improper conduct within the meaning of the statute. Even if there was no intentional unfairness, yet it was practically a fraud on the other parties. And it makes no difference that the evidence was laid out of the case, nor that it is found by the court that it had no influence with them in coming to their result. There can be no decisive proof on such a subject. The committee themselves can not know whether they were influenced by it or not. 2 Swift Dig., 155. *Walker* v. *Frobisher*, 6 Ves., 70. In *Hickox* v. *Parmelee*, 21 Conn., 86, the court decided not to set aside a verdict, where a communication had been made to a juror which the juror swore did not affect his opinion at all, but say that if the person making the communication had been a party or the agent of. a party, they would have set it aside, even if it had produced no effect. Here Lyon was the agent of the town of Woodstock. The paper handed in by Lester was not a mere survey of the routes, but contained remarks upon the routes surveyed.

*Carpenter*, for the respondents.

1. The committee were not subject to the same rules and restrictions that a jury are. They are required by law to view the proposed route, and are expected to hear any and all parties interested, on the ground and elsewhere. And if in so doing they do not act unfairly, or allow any advantage to one party over the other, their proceedings are unexceptionable. *Wethersfield* v. *Humphrey*, 20 Conn., 218.

2. The survey furnished by Mr. Lester was in itself cor-

rect. The facts presented by it were such as the committee had a right to know and were proper to be taken into consideration by them ; to wit, the altitude of the several hills on the two routes. To obtain this information they employed the services of a competent engineer. In doing this there was no improper motive or design, neither was there any fraud or deception practiced upon the committee, either by the surveyor or the agent of the town of Woodstock.

3. Whatever may be the opinion of the court as to the propriety of the course pursued by Mr. Gallup, they will not set aside the report, unless they can see that injustice has been, or might have been, done to the petitioners. *Pettibone v. Phelps,* 13 Conn., 445. The court has found the fact that the survey of Mr. Lester and his communication had no influence whatever with the committee in coming to a result. Of course therefore the petitioners have sustained no injury.

McCURDY, J. The general principle applicable to trials in whatever form, is that the utmost practicable fairness should be observed. No trick or surprise should be allowed, and no evidence or argument admitted on one side which the other party may not have an opportunity to meet and deny, or refute, or explain. As the mode of trial before a highway committee is very different from that before a jury, much less strictness is required in relation to the intercourse between parties or counsel and the triers in one case than in the other. But the same great object should be kept in view, and the same principle substantially maintained.

Whether such has been the fact in the present instance, is the question before the court. It appears from the finding, that after the case had been fully heard and submitted, Mr. Tillinghast, of the committee, was decidedly in favor of laying out a portion of the road, Mr. Gallup was decidedly opposed to it, and Mr. Lockwood was in doubt. It was then agreed that they should meet again at a future day, and in the mean time should review the proposed road by themselves.

Thereupon, by direction of Mr. Gallup, who was thus favorable to the respondent, Lyon, the agent of the town of Woodstock one of the respondents, employing Lester, a county surveyor, and McClellan, both of said Woodstock, procured, without the knowledge of the other party, a survey of the new route and a part of the old highway, together with notes of the elevations of the two routes, and a statement by said Lester of the great difficulty of making and repairing the highway prayed for. These were calculated on their face to create a strong prejudice against the new road. They were handed to said Gallup, and by him delivered to said Lockwood, while the two and said Lyon were in a room by themselves, and subsequently they were examined by the whole committee before a final decision. The said Lockwood then announced his opinion against the petitioners. Before the admission of the new evidence, he was in doubt. The palpable tendency of the evidence was to remove it; such unquestionably was the design; and immediately after the admission the doubt was removed. This seems to be tracing the connexion between cause and effect as clearly as can ordinarily be expected.

It is indeed testified by said Lockwood, and found by the court on his testimony, that the new evidence did not conduce to the change of his views. But the operations of the human mind are so subtle, and the influences which affect it so difficult to be appreciated, that it is utterly improbable, not to say impossible, for him to have known that the additional weight did not contribute to incline an opinion confessedly on the equipoise. All that he must be understood to have meant and the court to have found, is, that he was unconscious of the influence.

It is said that from the finding it appears that the survey was substantially correct, and it is claimed that the result would have been the same if the new evidence had been presented during the trial. The finding speaks of the accuracy of the survey on the principle adopted. But the principle itself was partial and calculated to mislead, inasmuch as it exhibited the elevations of the new road as they then

existed, and not the grade to which they might easily be reduced. And there is nothing to lessen the impropriety of admitting the statements of Mr. Lester without oath or cross-examination or chance for contradiction.

The case of *Wethersfield* v. *Humphrey*, (20 Conn., 218,) has little resemblance to this ; but the principles laid down in *Hickox* v. *Parmelee*, (21 Conn., 86,) seem directly in point.

Without intending therefore to impugn the motives of the persons who have been named, it is sufficient to say that their course was unusual, contrary to the policy of the law, tending to impair public confidence in legal tribunals, and dangerous in fact to the purity of trials.

For these reasons the superior court is advised to reject the report of the committee.

In this opinion the other judges concurred.

Advice that report of committee be rejected.